# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **HAROLD E. STRICKLAND,** | ) | |
| Plaintiff | ) | Civil Action No.: 7:12cv00005 |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **DR. MARK MILITANA, et al.,** | ) | By: Pamela Meade Sargent |
| Defendants | ) | United States Magistrate Judge |

The pro se plaintiff, Harold E. Strickland, is a Virginia Department of Corrections, ("VDOC"), inmate currently housed at Augusta Correctional Center, ("Augusta"). Strickland was housed at Deep Meadows Correctional Center, ("Meadows"), at the time this action was filed. In his initial complaint, Strickland raised claims against numerous defendants employed at Meadows and Mecklenberg Correctional Center, ("Mecklenberg"), as well as VDOC officials, the VDOC, the Commonwealth of Virginia and Assistant Attorney General John Parsons, ("Parsons"), alleging that he was denied adequate medical treatment for his Crohn's disease and that he was denied a "proper" diet which would accommodate his medical needs. During the pendency of this action, Strickland has been transferred to Powhatan Correctional Center, ("Powhatan"), and Indian Creek Correctional Center, ("Indian Creek"). This case is before the court on the plaintiff's Motion For Preliminary Injunctive Relief, (Docket Item No. 95), ("the Motion"). The Motion is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned now submits the following report and recommended disposition.

## I. Facts

Strickland brings this civil rights action against defendants employed at Meadows and Mecklenberg, as well as the VDOC officials, the VDOC, the Commonwealth of Virginia and Parsons, alleging that he was denied adequate medical treatment for his Crohn's disease and that he was denied a "proper" diet which would accommodate his medical needs. The Motion For Preliminary Injunctive Relief pertains only to the medical treatment that Stickland alleges he failed to receive for treatment of his Crohn's disease. Strickland seeks injunctive relief ordering that the defendants provide him with adequate medical care and a "proper" diet in light of his medical needs as they relate to his Crohn's disease. In particular, Strickland seeks injunctive relief ordering the following:[1]

1. Dr. MacDonald and the Warden at Augusta follow through with the recommendations of the Medical College of Virginia, ("MCV"), specialists;
2. VDOC to provide him with the medications Imuran and MiraLax;
3. An abdominal CT scan performed within 30 days and then to follow the specialist's suggestions;
4. To continue a low residue diet supplemented by two Boost drinks a day;
5. Oversight of his medical care by a neutral third party; and
6. VDOC to provide him with acid reflux medication.

Strickland filed copies of various medical reports in support of the Motion. (Docket Item No. 95, Exhibit X.) A GI report printed on October 18, 2012, shows that Strickland's Crohn's disease had no involvement in the colon and distal ileum, and that it was isolated to the small bowel. (Exhibit X at 1.) It was suggested that Strickland begin antibiotic therapy and take MiraLax as needed to produce daily

---

[1] By Order entered January 15, 2013, (Docket Item No. 146), Strickland's Motion was amended to include additional requests for injunctive relief.

-2-

soft bowel movements. (Exhibit X at 1.) The GI doctor was to check Strickland's liver function tests and Thiopurine S methyltranferase, ("TPMT"),[2] level for potentially starting Imuran in the future. (Exhibit X at 1.) It was recommended that Strickland have a follow-up exam in four months. (Exhibit X at 1.)

These records also show that Strickland gained three pounds between August 24 and October 19, 2012. (Exhibit X at 3-4.) Strickland also has submitted a document entitled "OP 720.2 Medical Screening, Classification, And Levels Of Care." (Docket Item No. 95, Exhibit J.)

The undersigned has reviewed this document but provides no summary of it because it does not appear to be relevant to the issues currently before the court. Strickland also has submitted an affidavit of a former cellmate at Augusta, Michael Wease. (Docket Item No. 95, Att. 3, ("Wease Affidavit").) According to Wease, he witnessed Strickland have to clean himself on occasion after soiling himself. (Wease Affidavit at 1.) Wease also stated that Strickland's medical problems caused Strickland to constantly pass gas that Wease described as "toxic." (Wease Affidavit at 1.) Wease stated that he requested and received a cell change when he could no longer stand the smell. (Wease Affidavit at 1-2.) He also stated that he had observed Strickland in "a lot of pain and not getting the medical care he needed." (Wease Affidavit at 1.)

---

[2]TPMT is a rare enzyme deficiency which is generally asymptomatic but can cause problems when certain anticancer or immunosuppressant drugs are used. The body is unable to metabolize these drugs, which leads to a toxic buildup, which can ultimately lead to reduced blood production by the bone marrow. *See* http://www.rightdiagnosis.com/t/thiopurine_s_methyltranferase_deficiency/intro.htm (last visited Jan. 23, 2013).

Strickland also has provided an affidavit from Indian Creek inmate Edward Alphonso Sawyer. (Docket Item No. 95, Att. 4, (Sawyer Affidavit").) According to Sawyer, a kitchen worker, while Strickland was an inmate at Indian Creek, he routinely received cottage cheese, an apple, rice and two slices of bread for every meal for more than a month. (Sawyer Affidavit at 1.) Eventually, Sawyer said he was allowed to give Strickland eggs or peanut butter or, occasionally, tuna fish. (Sawyer Affidavit at 1.)

Strickland also has provided an affidavit of Micah Bohn, Strickland's current cellmate. (Docket Item No. 133, Att. 2, ("Bohn Affidavit").) Bohn stated that Strickland appeared to have constant, severe abdominal pain. (Bohn Affidavit at 1.) Bohn stated that Strickland constantly passed "terrible, obnoxious gas," which caused Bohn to become ill on numerous occasions. (Bohn Affidavit at 1.)

Strickland stated on December 5, 2012, that he was receiving a low residue diet and Boost supplements, which had helped his symptoms. (Docket Item No. 133, Att. 1.) Strickland also has provided copies of various emergency grievances and informal complaints that he filed related to his medical care.

The defendants, H. Ponton, Harold Clarke, VDOC and Commonwealth of Virginia filed a response in opposition to the Motion For Preliminary Injunctive Relief. (Docket Item No. 123.) In support of this response, the defendants submitted the affidavit of Dr. David C. MacDonald, D.O., chief physician at Augusta. ("Dr. MacDonald Affidavit.") (Attachment to Docket Item No. 123.) Dr. MacDonald stated that Strickland has been placed on a special diet, and his weight has increased by six pounds since his arrival at Augusta on August 7, 2012. (Dr.

MacDonald Affidavit at 1.) He stated that Strickland is currently receiving a low residue diet and two Boost beverages per day. (Dr. MacDonald Affidavit at 2.) On October 17, 2012, Strickland was seen at MCV for follow-up for Crohn's disease, during which a CT enterography was ordered. (Dr. MacDonald Affidavit at 1-2.) MCV also recommended an upper gastrointestinal/small bowel follow through procedure; however, that procedure was not performed. (Dr. MacDonald Affidavit at 2.) Medical personnel with VDOC and MCV determined that the CT enterography and the upper gastrointestinal/small bowel follow through procedure were duplicative. (Dr. MacDonald Affidavit at 2.) Regardless, Dr. MacDonald stated that the upper gastrointestinal/small bowel follow through procedure is in the process of being scheduled. (Dr. MacDonald Affidavit at 2.) However, Dr. MacDonald does not have control over scheduling of medical procedures at facilities outside of Augusta. (Dr. MacDonald Affidavit at 2.) A pre-registration request form dated August 27, 2012, indicates that an appointment should be scheduled at the GI clinic for follow-up of Strickland's Crohn's disease. (Docket Item No. 133, Exhibit 1.)

During the same visit, the gastroenterologist at MCV suggested that Strickland be prescribed the medication Imuran. (Dr. MacDonald Affidavit at 2.) However, according to Dr. MacDonald, lab tests needed to be done prior to considering Imuran because there are many potential negative side effects from this medication. (Dr. MacDonald Affidavit at 2.) Dr. MacDonald stated that he interpreted the MCV recommendation to reflect Imuran as a consideration by the GI specialist upon a follow-up visit if Strickland's blood tests were normal. (Dr. MacDonald Affidavit at 2.) Dr. MacDonald stated that Strickland was showing a favorable response to treatment with antibiotics, was clinically improving and may

not need Imuran. (Dr. MacDonald Affidavit at 2.) Dr. MacDonald stated that Strickland was receiving the stool softener Colace instead of Miralax, which is not on the formulary at Augusta. (Dr. MacDonald Affidavit at 2.) Dr. MacDonald stated that to the best of his knowledge, Strickland's medical needs are being addressed, and he is receiving adequate medical treatment at Augusta. (Dr. MacDonald Affidavit at 2-3.)

*II. Analysis*

"The law is well settled that federal injunctive relief is an extreme remedy." *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995). Furthermore, a preliminary injunction is considered "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3rd Cir. 1989)). The party seeking entry bears the burden to establish that these factors support granting a preliminary injunction: (1) the likelihood of irreparable harm to the movant if preliminary injunctive relief is denied; (2) the likelihood of harm to the opposing party if the requested relief is granted; (3) the movant's likelihood of succeeding on the merits of the action; and (4) the public interest. *See Equity in Athletics, Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 99 (W.D.Va. 2007) (citing *Direx Israel, Ltd.*, 952 F.2d at 812).

Based on the information currently before the court, I find that Strickland has failed to establish that the entry of a preliminary injunction is appropriate. I find that Strickland has failed to demonstrate a likelihood of irreparable harm if injunctive relief is not granted or a likelihood of success on the merits. The Eighth

-6-

Case 7:12-cv-00005-SGW-PMS   Document 154   Filed 01/24/13   Page 6 of 9   Pageid#: 1090

Amendment of the United States Constitution prohibits the infliction of cruel and unusual punishment on convicted prisoners. *See* U.S. CONST. amend. VIII. To demonstrate cruel and unusual punishment, a plaintiff must establish that the defendants acted with "deliberate indifference" and he experienced an extreme deprivation of a basic human need or "serious or significant" pain or injury. *Wilson v. Seiter,* 501 U.S. 294, 299-303 (1991). In order to state a claim for violation of the Eighth Amendment right to be free from cruel and unusual punishment based on medical care, an inmate must show deliberate indifference to a prisoner's serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

Mere negligence in rendering medical care to a prisoner, however, does not rise to the level of a claim cognizable under § 1983. *See Goode v. Hartman,* 388 F. Supp. 541, 542 (E.D. Va. 1975); *Bishop v. Cox,* 320 F. Supp. 1031, 1032 (W.D. Va. 1970). "'Allegations of improper or insufficient medical treatment do not state a Constitutional claim.'" *Bishop,* 320 F. Supp. at 1032 (quoting *Hopkins v. County of Cook,* 305 F. Supp. 1011, 1012 (N.D. Ill. 1969)). Moreover, a prisoner's disagreement with medical personnel over the course of his medical treatment fails to state a claim "unless exceptional circumstances are alleged." *Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985) (mere disagreement between inmate and physician concerning proper treatment insufficient under § 1983). Also, a slight delay in receiving medical care does not rise to the level of a constitutional violation. *See Cooper v. Dyke*, 814 F.2d 941 (4th Cir. 1987) (delay in providing treatment does not violate the Eighth Amendment, unless the gravity of the injury is apparent).

The record before the court shows that Strickland's medical needs are being addressed, and he is receiving adequate medical treatment at Augusta for his Crohn's disease. (Dr. MacDonald Affidavit at 2-3.) The evidence before the court shows that the suggestions by the MCV specialist were considered, and VDOC medical staff has provided, or is in the process of providing, the appropriate treatment. (Dr. MacDonald Affidavit at 2.) Dr. MacDonald stated that Strickland was showing a favorable response to treatment with antibiotics, was clinically improving and may not need Imuran. (Dr. MacDonald Affidavit at 2.) Dr. MacDonald stated that Strickland was receiving the stool softener Colace instead of MiraLax, which is not on the formulary at Augusta. (Dr. MacDonald Affidavit at 2.) Furthermore, Dr. MacDonald reported that Strickland has gained weight and is on a low residue diet supplemented with Boost drinks. (Dr. MacDonald Affidavit at 2.) Also, Strickland has agreed that he is now receiving a low residue diet supplemented by Boost drinks. (Docket Item No. 133, Att. 1.)

### PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Strickland has failed to demonstrate a likelihood of irreparable harm if injunctive relief is not granted;
2. Strickland has failed to demonstrate a likelihood of success on the merits; and
3. Strickland has failed to demonstrate that the entry of a preliminary injunction is appropriate.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court deny the Motion, (Docket Item No. 95).

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Samuel G. Wilson, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: This 24th day of January, 2013.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE